I would like to reserve 5 minutes of my time for rebuttal. I think it's very important to understand the context in which this case arises. It is not just the February 14 letters that starts this lawsuit. It actually started back in 2011 when the prison legal news brought suit against Livingston County Jail regarding its postcard only policy. And what's important about that case is that the court granted, it's the same court, Judge Denise Pagewood, in both of our cases, granted our motion to dismiss in part on the prison legal news' argument that it had a right to have what it considered legal mail distributed to the inmates at the Livingston County Jail. The court granted that motion in March of 13, that's docket number 64 of the PLN case. Discovery then began in that case, and there were some disputes as to the scope of the discovery, which led to the deposition of Thomas Cremani taken in January of 14. At that time, Lt. Cremani was aware, because of the rulings of the court, that the court was going to allow very little discovery as to what is legal mail. Instead it was focused on whether the PLN has a right to have their materials disseminated to the prisoners. So two weeks after the deposition of Lt. Cremani takes place, that is when the ACLU, who had joined the PLN case as an amicus, submitted their letters, their 25 letters, to the Livingston County Jail. Essentially asking to conduct discovery as to the inmates' interest in pursuing the postcard-only policy. You say conduct discovery as to their interest in pursuing, but weren't they soliciting or offering to represent inmates? Well, if you look at the letter, it says we are exploring whether it's, in their view, unconstitutional, have you an interest to talk with us about the postcard-only policy. So, yes, I think it is solicitation, but the important thing is the trial court in the PLN situation already indicated that the PLN could not conduct that discovery. And in fact, we had filed a motion for sanctions because of this before the ACLU suit is filed. And that motion has not yet been decided. The prison legal news, did it have lawyers on its staff as the ACLU did, or is it just a news organization? It's a news organization, and yes, it does have lawyers on its staff. It had both in-house lawyers and retained lawyers, a number of them. Do they represent individuals, or do they just represent the news source? Just like the ACLU, the PLN is only the PLN. It's only representing its interests, just like the ACLU is only representing its interests in this case. The PLN stands for prison legal news? Correct. So it's a news organization as opposed to an advocacy organization, is that right? It advocates reform for prisoners. It's a news organization, but it does say that its purpose is to provide education to inmates and prisoners regarding conditions, and most of its publications are explaining and providing information regarding vindicating of prisoners' rights. Maybe we should focus on the ACLU letter, which says in part, the purpose of this letter is to find out if you are interested in meeting with an ACLU attorney for the purpose of obtaining legal advice or assistance regarding the jail's postcard-only mail policy. How can that not be legal mail? Because the definition of legal mail in the cases that we cite throughout our brief focus on the confidentiality nature of legal mail. Because in the 45 words of the First Amendment, there's no mention of lawyers or privileges or anything like that. It talks about the right of expression. Wouldn't there be a need for confidentiality among the jail prisoners so that the jail personnel wouldn't know what was going back and forth between the ACLU lawyer and the prisoners to the development of an attorney-client relationship? Again, this is the ACLU's interest, and the answer to that question depends. If the inmate had reached out to the ACLU, then yes. And if you look at Lieutenant Cremani's deposition in the policy, that is protected by the legal mail policy. Likewise, responses to that would be considered legal mail. But we have a different situation, Your Honor. It was the solicitation. It was the 25 letters that came in right after the court had already, in the prison legal news, had said, no, you cannot do that. Suppose an attorney who's not with the ACLU sends a letter to a prisoner that he's not already a lawyer for, but that lawyer knows that there's been some event or some possible need that that prisoner might have for legal representation. Would that letter be legal mail if the lawyer stamped it legal mail but there was not already an existing attorney-client relationship? If you look at Lieutenant Cremani's deposition, he talks about that situation. He talks about going to the inmate and saying, do you know this person? Is there something, is your attorney, is there some communication going on? The answer is no to the question, right? That's true. If the inmate wouldn't know there's a lawyer. That's true. Judge Moore's questions, right? That's correct. That's correct. Where it's opened up and looked at or sent back. Or sent back. Or placed in the inmate's property back. But nobody knows which of those options, correct? No one knows. Neither the sender nor the potential recipient would know which of those options had been selected. Well, no. If it's not delivered to the inmate, it is placed into the inmate's property bag. But isn't the evidence that the inmate is then not informed that it's been placed into the inmate's property bag? Keep in mind this, Your Honor. The typical stay is only about 15 to 17 days. That's my question, Counselor. My question is, do you have a program that provides notice either to the sender or to the recipient? And I think the evidence is that you do not. We contend that because of the short stay and they getting the documents when they check out is notice. Likewise, our policy on postcards and whatever is something that is provided to the inmates at the time of their stay. Their detainment. And it's also posted on the web. During the stay, you would concede that there is no process at all. You have some notice before and then they get it at the end. But that means that there's no process at all for the mailer of that information. Is that correct? Again, it's the same answer. During their stay, other than the web notifying the mailer that postcards are accepted, letters are not, that would be the notice that they would have. That would be the notice to some sender out in the larger world? Correct. So no notice? I'm not willing to concede that that is no notice, Your Honor. When you look at the Supreme Court's decision and they talk about what is notice, they're talking about, first of all, a publisher sending materials to somebody who willingly asks for it, who subscribes. That is not the situation that we're presented with. Here is somebody soliciting. Keep in mind, what is the difference between a lawyer, a bail bondsman, or someone else? What gives lawyers protected status? It's because the courts have recognized the confidential communications of the lawyer need to be protected. Here, we don't have that protected status and that's what we're focusing on. In defining legal mail, you have to look at the fact that it's confidential. One more question. In reading what Cromanti says, it appears to me that the numbers of letters also matter. I'm thinking about a case such as the Cox case that the jail has already been involved in. That's class action. If the attorneys representing that class sent, however many people there are in the jail at that time, who would be encompassed within that class, all from the same location, all to those individuals, under Cromanti's policy, would those letters be delivered? Yes, but keep in mind that in the class certification, the class has to be certified by the court and then there is some notice provision ordered by the court. We don't have that situation here. I'm trying to understand his numbers because he says in his deposition, if it were four or five from the same location to various inmates, I would not deliver them. I think he says it depends. He would check into it to see. But certainly 25, given the history of the PLN, that is the solicitation and that's the key difference in what we're arguing to the court, is it's got to be the confidentiality. It is the advice, it's the seeking of the advice, not the person, in this case ACLU, coming out and saying, hey, look it, we are thinking about pursuing a claim. And that's the key difference. Your red light is on. Thank you for that. Thank you so much. May it please the court, Daniel Karopkin for the ACLU. No jail or prison in the United States, none, completely prohibits the ACLU from sending letters to inmates. This case involves the unprecedented, completely unprecedented, problematic interaction of two policies. One is an unacceptably narrow definition of legal mail. And two is the postcard only policy. So when these policies come together, they mean that the ACLU has no meaningful way to inquire as to the conditions of confinement of inmates, offer legal advice and assistance, say we will come meet with you to represent you. If the First Amendment right to correspond with inmates means anything, it means that this preliminary injunction should be affirmed. Well, your opponent presents it that seeking, to use his last words, the seeking of advice is the key. So how do you respond to that? Well, we're offering to provide the advice. You're offering, but he says it's seeking that's the important thing. Right. And it wasn't seeking here because you were offering without somebody having sought first. That's correct. And Livingston County's central argument, I think, is that the ACLU's mail is not legal mail because we don't already have an attorney-client relationship with the inmates. But the Sixth Circuit has never adopted that narrow definition of legal mail. And in fact, in Muhammad v. Pitcher, which I think is our strongest case, the court is very clear that the Attorney General of Michigan can send legal mail to inmates and mark it as privileged, and it has to be treated as legal mail. Well, obviously, the Attorney General also doesn't have an attorney-client relationship with inmates, but they're allowed to send legal mail. That also refreshed my memory. Was that in the context of there not being a preexisting relationship between the Attorney General and the inmate? Yeah. Arguably, yes. It was actually a facial challenge for a declaratory judgment against a policy that said the Attorney General's mail can never be legal mail, and the Sixth Circuit struck that down. And so, you know, the Sixth Circuit spoke of situations where the Attorney General would be investigating prison conditions, seeking to bring actions to fix those prison conditions, and doing so based on information it got from inmates. And that's really the ACLU's function in a lot of ways as well. I mean, you know, in this case it was the postcard-only policy that we were seeking to challenge, and the District Court's decision on this is very clear. She wasn't saying that any mail from the ACLU is inevitably legal mail. She was saying that in this case, because we were offering to sit down with inmates and provide direct representation to help them challenge this policy, that based on that kind of correspondence, that is legal mail. How would the jail know that this mailing from the ACLU was legal mail, but some other mailing wouldn't be? Like, a mailing that would be, that the ACLU could stamp legal mail, but would be, say, notifying people about seminars that would be occurring. Right. I mean, so two points to that, Your Honor. I mean, I think, first of all, the same potential problem arises with any privileged mail status, right? So there's always the potential for someone to stamp something as privileged, and the jail doesn't really know exactly what's inside. But second of all, you know, if the jail had a clear policy about these are the things that we allow, these are the things that we don't allow as legal mail, and, you know, I think our version is consistent with Sixth Circuit law on this, then attorneys as officers of the court, I think, would be expected to follow that policy. And then if there's probable cause that the jail has that the senders of the mail are not following that policy, I think they could, if there's an emergency, if there are exigent circumstances, they could open that mail. If they need to get a search warrant, they could get a search warrant. And if they are, you know, if someone's violating that policy, there can be consequences for that. But here the jail's position is that it doesn't matter what the contents of the letter are. If you don't have a preexisting attorney-client relationship with the inmate, it's not legal mail. So is there key language in the letter that you think shows that it's legal mail? Is it for the purpose of obtaining legal advice? Is that the key language in the letter? Yes, and we agree precisely with the district court on this matter. On page 13 of her slip opinion, she says, determinative to the court is the fact that the, really three facts, the fact that the envelopes were labeled legal mail, they clearly delineated that the mail came from an ACLU attorney, and they asked if the inmate was, quote, interested in meeting with an ACLU attorney, or someone who works under the supervision of an ACLU attorney. And this part is italicized, for the purpose of obtaining legal advice or assistance regarding Livingston County's postcard-only policy. We think that is what makes it legal mail. And at the end of that paragraph, the judge went on to say these letters did not simply give general legal information. They offered the inmates the opportunities to meet with an attorney on a specific issue. And I think that is key here, and that is critical. What does the jail do with what they consider legal mail? Does it come in and an officer opens it up in the presence of the inmate, or is there some other process? Yeah, my understanding is that the jail would open that letter in the presence of the inmate, you know, shake it out to make sure there's no razor blades in it or something, and then give... They don't read it. They're not permitted to read it under the law for legal mail. You're willing to allow them to do that with your mail? You don't want it to go through? That's correct. And, you know, we contend that this is legal mail. It's privilege. It should be confidential. Largely because of the chilling effect, really, that the failure to treat that mail as privilege would have on communication, not only from the ACLU to inmates, but I think more importantly, from inmates coming back. But there's no question about inmates writing to lawyers. Is there, or is there? The jail contends that if an inmate wanted to write to a lawyer on his or her own initiative, that would be privileged. And that's not at issue in this case, Your Honor. So why does this need to be kept confidential if that is, in fact, the test, as your opponent argues? You know, it's really the chilling effect, primarily, on communication, not only from the ACLU, but back from the inmate. I mean, this case happens to involve the postcard-only policy, but you could imagine other very sensitive issues. Suppose we're investigating reports that there are sexual assaults occurring at the jail, maybe even by guards or corrections officers, and the letter from the ACLU says, you know, if you have been sexually assaulted and you'd like to speak with an ACLU attorney about vindicating your rights in this matter, let us know. I mean, you can imagine the difference between if that message comes on a postcard, which inmates are going to write back to the ACLU and not... Because, to try to spin it out, because the problem is if you had written that on a postcard, you, the ACLU, had written that on a postcard, and then a prisoner was writing confidential legal mail back to the ACLU, the guards would know, hey, why is this prisoner writing to the ACLU? It's because of the... That's exactly right, Your Honor. Could you send this letter to every jail inmate? So, you know, because of the... Are you asking because of the volume of it? I'm just curious if, you know, we have the case of one-on-one communication. Right. Here we have the case of 25 letters, and if there are 300 inmates, could you send the same letter to every one? I mean, I think that question goes to the possible burden that that might impose on a jail administratively to deal with volume of mail. And I think if the jail wanted to put together a policy that said, you know, due to the administrative burden of processing so much mail at once, you know, we'll have a limit per day on the number of letters that can come in, that would be a different case for the court. Maybe that would be challenged under the Turner Standard. Maybe it wouldn't. But that's not the issue here. The jail has said unequivocally the number of letters that the ACLU can send to inmates with whom it has no attorney-client relationship is zero. That's their policy, and that's what we're challenging. You mentioned the Turner factors. Do we need to analyze the Turner factors here? I don't think so, Your Honor, because essentially the jail already has a policy that says legal mail is not subject to the postcard-only restriction. And so if the court, as the district judge did, finds that this is legal mail, then you just sort of plug that into the policy, and I think you're all set. On the other hand, you know, admittedly this court in Muhammad v. Pitcher did both. It both analyzed the legal mail question, and then it went through the four Turner factors. How does the heightened scrutiny or heightened interest in legal mail relate to the Turner factors? I think it's critical, Your Honor. I think that the overall gist of the Turner test is that you consider the importance and the value of the First Amendment stakes involved. Considering that, you then have to determine whether the jail's practice is reasonably related to a legitimate penological interest. So you can't view the jail's... So you overlay this heightened concern on top of the reasonableness factors? That's absolutely correct. So you can't just look at the jail's interest in a vacuum. You have to sort of weigh them against the interest of the First Amendment involved. And so that's why when it's legal mail, the restrictions that jails and prisons can place on legal mail, there are still restrictions. They're not zero. They can have regulations, but they're subject to a heightened standard of review when it's legal mail. I have a question about the 14th Amendment claim. Your motion included the four components. Three of them were First Amendment. One of them was the 14th Amendment. Your motion was granted in full. But the reference in the court's order was primarily, or basically, fully to the First Amendment claims. What is your position on the notice and response request that you made concerning 14th Amendment due process and the court's order that's before us? So I read the court's order as granting the PI on both the First and 14th Amendment claims in the following sense. There's a sentence on the last page of the order that says, if the inmate is no longer in custody, defendants must return the mail forthwith to plaintiff indicating the same. So what I read that to mean is, okay, the ACLU is going to send legal mail. You're required to deliver the legal mail. And if you're not delivering it for the reason that the inmate's no longer there, you need to tell the ACLU about that. I think going forward, clearly the 14th Amendment claim that we have means that if there's still a disagreement between the jail and the sender or the inmate about whether what's being sent is legal mail, because that's the question. Is it legal mail or isn't it legal mail? There needs to be a process for working that out other than just an arbitrary summary decision by the jail administrator not to deliver that mail. And that would be fleshed out in discovery because we're just at this preliminary injunction phase. So that 14th Amendment due process would be fleshed out in discovery and resolved in the resolution of the merits of the case? Well, hopefully that would happen. But I think, Judge, that the record is very clear that they provide absolutely no notice or opportunity to contest the decision no matter what right now when they withhold mail, when they decide it's not legal mail. But yeah, we'd be asking for both, that this kind of mail that we have here is legal mail and it's subject to those heightened First Amendment protections. And also, if it's not being delivered and it's being stamped legal mail, there's got to be notice and an opportunity to be heard. Is this policy in Livingston County unusual in Michigan or is this typical for county jails? It's the only policy I know of in the entire country that prohibits the ACLU from sending letters to inmates because what we have here is the combination of two different policies. It's the very restrictive definition or narrow definition of legal mail such that it doesn't even include ACLU attorneys writing about jail conditions. And it's the postcard-only policy. Together, which means that I think for the first time we've ever seen that we're aware of, the ACLU couldn't even get a letter through. And that's actually what helps distinguish this case from some of the out-of-circuit cases that the defendants have cited. I mean, there are really two distinctions. One is, in all of those cases, the letter still got delivered. The only question is whether it was going to be open outside the presence of the inmate or within the presence of the inmate. So that's, I think, a huge difference. And the other difference, I think, with the out-of-circuit cases is almost all of those statements that you look at about the attorney-client relationship is really dicta. And I would encourage the court, if you're looking at those out-of-circuit cases, to really look hard at whether those statements are really critical to the holding of the case or whether, in fact, that issue never even really came up in the briefing. And this is the case where that issue is squarely on point and squarely before the court, is whether the ACLU, when offering legal advice and assistance to inmates individually to come and meet with them with the eye toward representing them in a lawsuit, can send mail to those inmates that's legal mail and allowed through so that they will see that the ACLU is out there ready to stand up for them, ready to represent them, that this is an issue that they can challenge. I see my time's up. Thank you, Your Honor. Thank you. I think there are three key points that I need to address. I'm going to work backwards. There's been discussion about the 14th Amendment notice issue. Our position is that these letters do not constitute, are not protected, and thus the 14th Amendment notice doesn't come into play. When you look at Thornburg, which is the Supreme Court case that talks about giving senders notice, it is a publisher and it's from somebody who willingly seeks the information. That's not the case here. So if, in fact, this were held to be legal mail, then you would concede that the notice and due process rights also attach? I think I have to, yes. Okay, thank you. Now, that gets into the other case I want to talk about. I'm working backwards. The solicitation. This is not an inmate's case. This is not an inmate seeking to vindicate his or her issues. It is the ACLU. And the courts have indicated that in a prison, keep in mind we're a jail. We're not a prison. Significantly different in the resources, the number of inmates, as well as the length of stay. But... How many inmates a day does the jail have? Typically we're in the 240 to 250 range right now. Straight up, we're in the process of expanding our jail to meet the needs of the community. You said that they stay an average of how long? It's in the 15 to 18 day range. Some counties, I know, have people as long as a year. We can have people up to a year. That is correct. The average stay is significantly less. But keep in mind, as to the solicitation aspect of it, courts have made clear that the Constitution does not require government to assist these entities in promoting or distributing their message. And that's exactly what they are arguing. We have never allowed to send letters. That's not true. They can send postcards. They can contact... What about their hypo about the guards being accused of sexual offenses against the prisoners? And the ACLU knows about that and wants to offer its services to represent guards. So wants to send a blanket, let's say hypothetically, solicitation or offer of free legal advice to prisoners who have been beset by that. Wouldn't, if it's on a postcard, wouldn't any prisoner responding be likely to be abused further? No, I think that's a stretch. I mean, that's absolutely a stretch to say that if a postcard comes in. Keep in mind, we don't read postcards. We are, and that's the purpose of it. As the judge found... That's a little hard to understand. There's a card right here in front of you with information written on it. Do you just hold it away? I'm seeing practicality here. You're right. You have to concede. If it's on the back of a postcard, anybody can read it. Yes, absolutely. But we're looking for contraband. Obviously, the inks, the stamps, where there's been drugs on the back of it, that's really what we're looking for. Yes, we probably do skim them for threats and so forth. Absolutely, but I don't think that... The concern that's being expressed here is in fact akin to what went on in the Cox case, is it not? This is a case that you've just been involved in and you've got the issues of women having to bathe or dress in front of guards. Isn't it a real and practical question if the ACLU wants to contact the women in that jail are they going to write a postcard to them and say, are guards watching you while you're unclosed? And these women then are going to write back on an open postcard, yes, they are? Well, I guess the proof of the pudding is in fact that that class was certified and that they were reached out, but it wasn't through this process that they're suggesting. And keep in mind that the length of stay plays a role in the access for inmates once they're released to make their claims. But the important thing I really want to get to is he talks about Muhammad being his strongest case. Well, apparently, if you look at a subsequent decision in Boswell v. Mayer, 169, Fed 3, 384, it appears that the court recognized Judge Seiler's dissent in Muhammad and mentioned that Muhammad looks at under no circumstances would a letter from the Attorney General be considered legal mail. And Boswell makes mention that if the Attorney General indicates that there is a level of confidentiality to a privilege and the MDOC changed its policy to reflect that, that that policy was constitutional. The key part of that is the confidentiality, the attorney-client relationship. You don't have to represent someone for the privilege to attach, which is exactly what the ACLU negotiated in Fauntroy v. Beard with the control number case. It was a verification by the lawyers that the communication legal mail would be limited to privileged, confidential information with that inmate. That's what... What was the distinction that was drawn in that dissent that recognized that you were looking at the Attorney General, but also noting the specifically listed exceptions, which were the prisoner's attorney, the courts, and legal assistance organizations? On Boswell or Muhammad? No, on Muhammad. On Muhammad, what I read the case to say is, and they italicized the word always, always the Attorney General's letter would not be considered legal mail. But the import of what I'm asking is that there was an understanding there that legal assistance organizations were protected in the ability to provide their mail, which is the very issue before us, is it not? Yes. But the focus, though, in determining what is protected, what isn't, is the confidentiality, the privilege aspect of the communication. And clearly the ACLU, by publishing its content, recognized that the letter isn't confidential nor privileged. So that's what we are focusing on. Did the ACLU publish its letter here, or wasn't it your side that published it in the Livingston case, the other one? Yes and yes. We published it in our motion for sanctions. It's attached as an exhibit to their complaint that started this case. So which came first? Our motion for sanction came first. Okay, so you initiated the so-called breach of confidentiality. I can't answer that the way you posed it because it presumes that there's confidentiality. That's why I called it the so-called breach. Okay. Yes, we did, and of course there was no motion to strike that or to claim any type of confidentiality, either in that case or this case. Your red light is on again. So thank you very much. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?